FILED

SEP 30 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____DEPUTY

1

2

3

4

5

6

7

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

8

9

10  COASTAL ENVIRONMENTAL RIGHTS        Civil Case No. 3:19-cv-00777-WQH-
    FOUNDATION, a California non-profit     BLM
11  corporation; SAN DIEGO
    COASTKEEPER, A California non-profit    **CONSENT DECREE**
12  corporation,
13             Plaintiffs,
       vs.
14
                                           **(Federal Water Pollution Control Act,**
15  ROHR, INC., a Delaware corporation,    **33 U.S.C. §§ 1251 *et seq.*)**

16             Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

## CONSENT DECREE

The following Consent Decree is entered into by and between San Diego Coastkeeper ("Coastkeeper"), Coastal Environmental Rights Foundation ("CERF and Coastkeeper") (collectively, "Plaintiffs") and Rohr, Inc., a Collins Aerospace Company ("Defendant" or "Rohr"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS,** CERF is a non-profit organization in North San Diego County and active throughout California's coastal communities;

**WHEREAS,** Coastkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in San Diego, California;

**WHEREAS,** Coastkeeper is dedicated to the preservation, protection, and defense of the rivers, creeks, and coastal waters of San Diego County from all sources of pollution and degradation;

**WHEREAS,** CERF was established to aggressively advocate, including through litigation, for the protection and enhancement of coastal natural resources and the quality of life for coastal residents, and one of CERF and Coastkeeper's primary areas of advocacy is water quality protection and enhancement;

**WHEREAS,** Rohr is the owner and operator of an aerospace parts manufacturing company, located at 850 Lagoon Drive, Chula Vista, CA 91910 hereinafter referred to by the Settling Parties as the "Rohr Facility";

**WHEREAS,** Plaintiffs' members live and/or recreate in and around waters which Plaintiffs' members allege receive discharges from the Rohr Facility, including specifically San Diego Bay and the Pacific Ocean;

**WHEREAS,** storm water and non-storm water discharges from the Rohr Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ, as amended by Order

No. 2014-0057-DWQ (such permit, including any amendments, updates or revisions, "Storm Water Permit") and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA");

**WHEREAS**, on February 21, 2018, CERF and Coastkeeper sent Rohr, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board"), and the San Diego Regional Water Quality Control Board ("Regional Board") a notice of intent to file suit ("Notice Letter") under Sections 505(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1365(a) and (b). The Notice Letter alleged violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Storm Water Permit at the Rohr Facility;

**WHEREAS**, on April 26, 2019, CERF and Coastkeeper filed a complaint against Rohr in the United States District Court, Southern District of California alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Storm Water Permit at the Rohr Facility ("Complaint");

**WHEREAS**, CERF and Coastkeeper allege Rohr to be in violation of the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act with respect to the Rohr Facility;

**WHEREAS**, Rohr denies all allegations in the Notice Letter and Complaint relating to the Rohr Facility;

**WHEREAS**, Rohr is in the process of significantly reducing manufacturing activities at the Rohr Facility and removing certain outdoor storage materials from the Rohr Facility;

**WHEREAS**, Plaintiffs acknowledge the aforementioned activities will substantially reduce the potential for contaminants in storm water discharge from the Rohr Facility;

**WHEREAS**, Plaintiffs and Rohr have agreed that it is in the Settling Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint with respect to the Rohr

1  Facility without further proceedings;

2      **WHEREAS,** all actions taken by Rohr pursuant to this Consent Decree shall be

3  made in compliance with all applicable federal and state laws and local rules and

4  regulations.

5      **NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE**

6  **SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS**

7  **FOLLOWS:**

8      1.    The Court has jurisdiction over the subject matter of this action pursuant to

9  Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

10      2.    Venue is appropriate in the Southern District of California pursuant to

11  Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Rohr

12  Facility is located within this District;

13      3.    The Complaint states claims upon which relief may be granted pursuant to

14  Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

15      4.    Plaintiffs have standing to bring this action;

16      5.    The Court shall retain jurisdiction over this matter for purposes of enforcing

17  the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter

18  as is necessary for the Court to resolve any motion to enforce this Consent Decree.

19  **I.**    **OBJECTIVES**

20      6.    It is the express purpose of the Settling Parties entering into this Consent

21  Decree to further the objectives set forth in the Clean Water Act and to resolve those

22  issues alleged by CERF and Coastkeeper in their Complaint. In light of these objectives

23  and as set forth fully below, Rohr agrees to comply with the provisions of this Consent

24  Decree and to comply with the requirements of the Storm Water Permit and all applicable

25  provisions of the Clean Water Act.

26  **II.**    **AGENCY REVIEW AND TERM OF CONSENT DECREE**

27      7.    Plaintiffs shall submit this Consent Decree to the United States Department

28  of Justice and the EPA (collectively "Federal Agencies") within three (3) days of the final

1  signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The
2  agency review period expires forty-five (45) days after receipt by both agencies, as
3  evidenced by written acknowledgement of receipt by the agencies or the certified return
4  receipts, copies of which are to be provided to Rohr upon request. In the event that the
5  Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to
6  meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a
7  reasonable amount of time.

8      8.      The term "Effective Date" as used herein shall be forty-five days after this
9  Consent Decree is submitted to the Federal Agencies for approval or the date upon which
10  the last Federal Agency approves this Consent Decree, whichever is earlier.  Plaintiffs
11  shall promptly notify Rohr of the date of submission and approval.

12      9.      The terms of this Consent Decree will cease to apply to those portions of the
13  Rohr Facility no longer covered under the Storm Water Permit upon submittal by Rohr to
14  Plaintiffs of the Notice of Amendment as provided in paragraph 33.  As to portions of the
15  Rohr facility that continue to engage in manufacturing of aircraft parts and equipment
16  (within the meaning of Attachment A, Category 2 to the Storm Water Permit), this
17  Consent Decree shall remain in effect for two (2) years after the Effective Date, unless
18  prior to the termination date either Party has invoked the dispute resolution provisions of
19  this Consent Decree and there is an ongoing, unresolved dispute regarding either Party's
20  compliance with this Consent Decree, in which case the Consent Decree will terminate
21  upon final resolution of the dispute pursuant to the dispute resolution provisions
22  contained herein.

23  **III.     COMMITMENTS OF THE SETTLING PARTIES.**

24      A.    **Storm Water Pollution Control Best Management Practices.**

25      10.      It is the express purpose of the Settling Parties entering into this Consent
26  Decree to further the objectives set forth in the Clean Water Act and to resolve those
27  issues alleged by CERF and Coastkeeper in their Complaint. In light of these objectives
28  and as set forth fully below, Rohr agrees, *inter alia*, to comply with the provisions of this

1  Consent Decree, the requirements of the Storm Water Permit, and all applicable

2  provisions of the CWA.

3       11.    In addition to maintaining the current structural and non-structural Best

4  Management Practices ("BMPs") described in the Rohr Facility's Storm Water Pollution

5  Prevention Plan ("SWPPP"), Rohr shall develop and implement BMPs necessary to

6  comply with the provisions of this Consent Decree and the Storm Water Permit,

7  including but not limited to those that achieve the Best Available Technology

8  Economically Achievable ("BAT") and the Best Conventional Treatment Technology

9  ("BCT") and to comply with the Storm Water Permit's Discharge Prohibitions and

10  Receiving Water Limitations.

11       12.    Rohr agrees to develop and/or implement BMPs and currently intends to

12  discontinue on-site manufacturing activities on portions of the Facility and to remove

13  tooling as described more fully below and according to schedules in attached Exhibits.

14      **B.**   **Discharge Locations and Storm Water Sampling.**

15       13.    <u>Discharge Locations</u>. The current and future storm water sample locations

16  for the Rohr Facility are identified in the Storm Water Permit and in the facility map

17  attached as Exhibit A.  Should the storm water sample locations change from those

18  presently identified in the Storm Water Permit, Rohr will provide CERF and Coastkeeper

19  with information describing the new location[s].

20       14.    <u>Sampling</u>. The following storm water monitoring procedures shall be

21  implemented at the Rohr Facilities:

22              14.1.    <u>Frequency</u>. During the life of this Consent Decree, Rohr shall collect

23                          samples from all discharge locations at the Rohr Facility from a

24                          minimum of four (4) "Qualifying Storm Events" that occur in a

25                          reporting year such that Rohr collects two (2) samples during the first

26                          half of the reporting year and two (2) samples during the second half

27                          of the reporting year. A "Qualifying Storm Event" or "QSE" is a

28                          storm event that produces a discharge from at least one drainage area

and is preceded by forty-eight (48) hours with no discharge from any drainage area. If, prior to March 1, Rohr has collected samples from two (2) or fewer qualified storm events, Rohr shall collect samples during as many qualified storm events as necessary until a minimum of 4 storm events have been sampled for the reporting year.  No two (2) samples may be from the same storm event.  Rohr shall not be required to collect samples during rain events which, in the reasonable judgment of Rohr and its consultants, do not qualify as a QSE. Sample collection and visual observations shall not be required during dangerous weather conditions such as flooding or electrical storms or outside of scheduled facility operating hours.

14.2.   Additional Sampling. Rohr may conduct additional influent and effluent sampling during rain events as needed to evaluate the effectiveness of the Manufacturing Reduction and Tooling Removal and/or Existing BMPs and Additional BMPs including, without limitation, the Ion Exchange Treatment System.

14.3.   Contained or Stored Storm Water. Rohr does not store or contain storm water at the Rohr Facility. To the extent storm water is stored or contained on the Rohr facility in the future, Rohr shall sample the stored or contained storm water at the Rohr Facility before it is released even if not during operating hours.

14.4.   Parameters. Rohr shall analyze each storm water sample collected from a Sample Location for the contaminants set forth in the Table 1 Numeric Thresholds.

14.5.   Laboratory. A laboratory accredited by the State of California shall analyze all samples collected pursuant to this Consent Decree.

14.6.   Detection Limits. The laboratory shall use analytical methods adequate to detect the individual contaminants at or below Table 1

1    Numeric Thresholds.

2    14.7.  <u>Hold Time</u>. All samples collected from the Rohr Facility shall be

3    delivered to the laboratory as necessary to ensure that sample "hold

4    time" is not exceeded for each contaminant sampled. For field

5    measurements, such as pH, Rohr shall use portable instruments, and

6    not pH paper, which shall be calibrated and used according to

7    manufacturers' instructions and approved industry methodology, i.e.,

8    40 C.F.R., Part 136.

9    14.8.  <u>Results</u>. Rohr shall request that sample analysis results be reported to

10    them within ten (10) business days of laboratory receipt of the

11    sample, or as soon as possible without incurring "rush" charges.

12    14.9.  <u>Reporting</u>. Rohr shall notify CERF and Coastkeeper in writing of any

13    laboratory results, including a copy of the Quality Assurance/Quality

14    Control and the laboratory report for all samples described and taken

15    in accordance with the samples identified in paragraphs 14.1, 14.2,

16    and 14.3 collected at the Rohr Facility that are being uploaded to

17    SMARTS within five (5) business days of uploading such

18    information to SMARTS.

19    **C.    <u>Reduction of Pollutants in Discharges.</u>**

20    15.    <u>Reduction in Manufacturing Activities and Removal of Outdoor Tooling.</u>

21    Pursuant to the schedules attached hereto as Exhibit B ("Schedules"), Rohr intends to (i)

22    significantly reduce manufacturing activities on portions of the Facility and (ii) remove

23    the tooling currently stored outdoors at the Rohr Facility (collectively, "Manufacturing

24    Reduction and Tooling Removal"). The Parties acknowledge that these activities are

25    expected to reduce the potential for contaminants in storm water discharge from the

26    Facility.  The Parties are relying upon the implementation of these plans, in lieu of other

27    potential BMPs, for reduction of contaminants in storm water discharges from the

28    Facility.  The implementation of these plans, however, does not excuse Rohr from

1   meeting the numeric thresholds in Table 1, below.

2      16.     Schedules; Delays. Rohr shall implement plans for the Manufacturing

3   Reduction and Tooling Removal by the target dates ("Target Dates") as set forth in the

4   Schedules, Exhibit B. If Rohr becomes aware of any change that is likely to result in

5   delay in attainment of any Target Dates in excess of 30 days, it shall notify Plaintiffs of

6   such delay within ten (10) business days of learning of such change and the Parties shall

7   meet and confer pursuant to the Dispute Resolution provisions outlined below in order to

8   agree upon any interim BMPs that may be reasonably necessary to limit discharges of

9   contaminants into stormwater pending attainment of the Target Date[s]. Failure to meet a

10   deadline for Manufacturing Reduction and Tooling Removal without prior notification to

11   Plaintiffs shall constitute a Missed Deadline, as defined below.

12      17.     Best Management Practices. Rohr has instituted and will continue to

13   implement structural and non-structural BMPs including, without limitation, recent

14   installation of storm drain inlet filters containing metal-sorbent materials to remove

15   particulate and soluble metals ("Existing BMPs").

16      18.     Additional BMPs. In addition to the Manufacturing Reduction and Tooling

17   Removal, Rohr shall implement the BMPs described below ("Additional BMPs")

18   pursuant to the table and schedule contained in Exhibit C (some of which may have

19   already been implemented as of the Effective Date):

20              18.1. Installation of filters on, under or around selected downspouts capable

21                    of reducing soluble metal concentrations in water; provided, however,

22                    that if Rohr reasonably determines that appropriately-sized downspout

23                    filters are not reasonably available or that the volume of water during

24                    significant rain events makes this impractical, Rohr may instead place

25                    Filtrexx rolls in downspout discharge areas;

26              18.2. Installation of six additional storm drain inlet filters containing metal-

27                    sorbent materials (in place of existing filters); provided, however, that if

28                    Rohr reasonably determines that appropriately-sized inlet filters are not

1    reasonably available or that the volume of water during significant rain

2    events makes this impractical, Rohr may instead place of Filtrexx rolls in

3    one or more of the storm drain inlet areas;

4    18.3.  Installation of additional metal-sorbent rolls (such as Filtrexx metallox

5    TM rolls or similar materials) as appropriate in locations such as

6    drainage culverts and the downstream side of the tool storage area;

7    18.4.  Slurry coating/paving or installation of Filtrexx rolls at selected areas

8    of the Facility that continue in manufacturing use after the

9    Manufacturing Reduction and Tooling Removal;

10   18.5.  Installation of the Ion Exchange Treatment System (under

11   circumstances described in Paragraph 19 below);

12   18.6.  On and after the Threshold Date (as defined in paragraph 20),

13   additional advanced BMPs as necessary to achieve Table 1 thresholds,

14   below.

15   19.    Ion Exchange Treatment System.  In addition to the BMPs described in

16   paragraph 18, Rohr shall install and operate an ion exchange treatment system at Outfall

17   1 ("Ion Exchange Treatment System") prior to October 1, 2019, contingent upon (i) any

18   required permitting or access agreements from other parties; and (ii) applicable lead times

19   relating to the delivery, installation and testing of the Ion Exchange System as

20   communicated to Rohr by Rohr's supplier.  Installation of this treatment system shall not

21   excuse Rohr from meeting Table 1 Numeric Thresholds after the Threshold Date (defined

22   below) on portions of the site where activities covered under the Storm Water Permit

23   continue to occur.

24   20.    Contaminant Reduction.  Rohr shall develop and implement BMPs to reduce

25   pollutants in storm water discharges from the Rohr Facility to levels below those in Table

26   1 ("Numeric Thresholds"); provided, however, that these Numeric Thresholds shall not

27   become applicable until January 31, 2021, for those portions of the Facility subject to the

28   Storm Water Permit.  ("Threshold Date").  In the interim, Rohr shall use good faith efforts

to implement the Additional BMPs described in paragraph 18.

**Table 1. Numeric Thresholds[1]**

| Pollutant | Values |
|---|---|
| Total Suspended Solids | 100 mg/L |
| Zinc* | 0.09 mg/L |
| Copper* | 0.0048 mg/L |
| Oil and Grease | 15 mg/L |
| Aluminum | 0.75 mg/L |
| Magnesium** | 0.064 mg/L |
| pH | 6.5-8.5 s.u. |
| Lead* | 0.21 mg/L |
| Chromium, Hexavalent | .05 mg/L |

\* Metals marked with an asterisk are saltwater California Toxics Rule standards and are not hardness dependent.

21.    Natural Background Source Demonstration. The Numeric Threshold for magnesium shall be subject to adjustment to reflect natural background concentrations in the environment (contributed to stormwater discharge from non-industrial sources such as run-on, shallow groundwater, direct precipitation or sea spray). Rohr will conduct a natural background source demonstration that will include sampling and analyzing storm water samples for magnesium (sampling run-on, shallow groundwater and direct precipitation falling on the facility.) Existing data, research and published literature may also be used in support of the natural background source demonstration. Rohr shall provide the results of the natural background source demonstration to Plaintiffs and the parties shall meet and confer in good faith to agree upon appropriate adjustments to the Numeric Threshold based on that demonstration.

22.    Action Plan for Table 1 Exceedances. If Rohr's monitoring reveals an exceedance of the numeric thresholds specified in Table 1 for any one constituent during a wet season, Rohr shall submit a plan to Plaintiffs for reducing the level of pollutant to Table 1 Numeric Thresholds ("Action Plan"). The Action Plan for the Rohr Facility shall be prepared by a Qualified Industrial Storm Water Professional ("QISP") and must be

---

[1] These values will apply only to those areas of the site subject to the Storm Water Permit after 1/31/21.

1  submitted to Plaintiffs within thirty (30) days of Rohr's receipt of sampling data showing

2  exceedances of Table 1 Numeric Thresholds.[2] Any Action Plan required by this

3  paragraph, shall be prepared by a QISP and must be submitted to Plaintiffs by June 1, or

4  within thirty (30) days of Rohr's receipt of sampling data showing the exceedance of the

5  limit for the same pollutant listed in Table 1 Numeric Thresholds, whichever is earlier.

6  Submitting an Action Plan that does not include all of the requirements in this paragraph

7  will be considered a Missed Deadline.

8        22.1.  <u>Action Plan Requirements</u>. An Action Plan shall include at a

9        minimum: (1) the identification of the contaminant(s) discharged in

10        excess of the numeric threshold(s); (2) an assessment of the source of

11        each contaminant discharged in excess of the numeric value(s); (3)

12        the identification of additional BMPs, including either preventing the

13        exposure of pollutant and pollutant sources to storm water and/or

14        further treatment of storm water prior to discharge from the Rohr

15        Facility that will reduce pollutant concentrations to those below

16        Table 1 Numeric Thresholds; and (4) time schedules for

17        implementation of the proposed BMPs (if any). The time schedule(s)

18        for implementation of additional BMPs shall ensure that all BMPs

19        are implemented as soon as possible but no more than 120 days after

20        CERF and Coastkeeper provide Rohr comments on the Action Plan,

21        unless the Settling Parties agree on a later date based on the time

22        needed to design, permit, procure, and install the necessary

23        equipment.

24        22.2.  <u>Action Plan Review</u>. CERF and Coastkeeper shall have thirty (30)

25        days upon receipt of Rohr's Action Plan to provide Rohr with

26        comments on the Action Plan. Within twenty-one (21) days of Rohr's

27

28  [2] The Action Plan discussed in this Consent Decree is separate and distinct from any "Action Plan" discussed in the Storm Water Permit.

1     receipt of CERF and Coastkeeper's comments on the Action Plan,

2     Rohr shall consider CERF and Coastkeeper's comments and shall

3     either incorporate them into the Action Plan or, if Rohr declines to

4     accept one or more of CERF and Coastkeeper's comments, provide

5     CERF and Coastkeeper with a written explanation of the grounds for

6     rejection.

7     22.3.   Disputes regarding the adequacy of a particular BMP shall not impact

8     the schedule for implementing any other BMP set forth in the Action

9     Plan. Any disputes as to the adequacy of the Action Plan shall be

10     resolved pursuant to the dispute resolution provisions of this Consent

11     Decree, set out in Article VI below.

12     23.   <u>Extensions</u>. Rohr shall contact Plaintiffs to request an extension of any

13 deadline set forth in this Consent Decree as soon as practicable and in no event later than

14 five (5) business days prior to the deadline at issue. Unexcused failure to request an

15 extension in this timeframe will be considered a Missed Deadline. Plaintiff's consent to

16 Rohr's requested extension shall not be unreasonably withheld.

17     24.   <u>SWPPP and MIP Revisions</u>. Rohr shall revise its SWPPP and/or Monitoring

18 & Implementation Plan ("MIP") as applicable within thirty (30) days of receipt of

19 Plaintiff's Action Plan comments to reflect the changes and/or additional BMPs set forth

20 in the Action Plan. Rohr shall notify CERF and Coastkeeper in writing when the final

21 Action Plan has been completely implemented, and the SWPPP and/or MIP have been

22 revised.

23   **D.**   **Visual Observations.**

24     25.   All visual observations shall be conducted in accordance with the terms of

25 the Storm Water Permit and this Consent Decree, and shall include at least the following:

26     25.1.   <u>Storm Water Discharge Observations</u>. During the life of this Consent

27     Decree, Rohr shall conduct visual observations at each point where

28     storm water is discharged during each QSE for which sampling is

1    conducted.

2        25.2.    <u>Non-Storm Water Discharge Observations</u>. During the life of this

3            Consent Decree, Rohr shall conduct monthly non-storm water visual

4            observations at each discharge point.

5        26.    Rohr shall maintain logs of the visual observations, which shall be available

6    for review on site for a period of 5 years in conformance with the Storm Water Permit,

7    and shall make these records available for Plaintiffs' review via email within five (5)

8    business days of the request.

9    **E.**    **Employee Training.**

10        27.    Within forty-five (45) days of the Effective Date, Rohr shall conduct

11    additional employee training in order to familiarize employees at the Rohr Facility with

12    the requirements of the Consent Decree. The training program shall include use of

13    appropriate training materials needed to implement the training program. Rohr shall also

14    ensure that all team members implementing the various compliance activities under the

15    Storm Water Permit and this Consent Decree are properly trained to implement BMPs,

16    evaluate BMP  effectiveness, conduct visual observations, and perform monitoring

17    activities.

18        28.    Training shall be provided on an annual basis, or as otherwise required to

19    ensure compliance with the terms of this Consent Decree, by a private consultant or a

20    representative of Rohr who is familiar with the requirements of this Consent Decree and

21    the Storm Water Permit. The training shall be repeated as necessary to ensure that

22    employees are familiar with the requirements of this Consent Decree, the Storm Water

23    Permit, and the Rohr Facility's SWPPP and MIP, as appropriate to the particular

24    employee's responsibilities. Rohr shall ensure that any new employee who is responsible

25    for implementation of the SWPPP, the MIP, or compliance with other terms of the Storm

26    Water Permit or Consent Decree has an acceptable level of knowledge before being

27    responsible for such implementation or compliance.

28        29.    Rohr shall maintain training records to document compliance with Article

1  II.E of this Consent Decree and shall make these records available for Plaintiff's review

2  at the Rohr Facility upon request. The Training Program shall be specified in the SWPPP

3  and Rohr shall modify the SWPPP as necessary to reflect the training program required

4  by this Consent Decree.

5      **F.**    **Storm Water Pollution Prevention Plan and Monitoring and Reporting**

6  **Plan.**

7      30.    Within sixty (60) days of the Effective Date of this Consent Decree, Rohr

8  shall revise the Rohr Facility's SWPPP and/or MIP as applicable to include:

9          30.1.    All BMPs that are currently utilized at the Rohr Facility;

10          30.2.    All BMPs identified and developed pursuant to this Consent Decree

11              and/or the Storm Water Permit;

12          30.3.    The specific individual(s) or positions responsible for compliance

13              with the Storm Water Permit and this Consent Decree;

14          30.4.    A detailed site map that includes all information required by the

15              Storm Water Permit and this Consent Decree;

16          30.5.    A description of each manufacturing activity, all potential pollutant

17              sources, and each potential pollutant associated with each

18              manufacturing activity and/or pollutant source.

19      31.    Additional and Ongoing Revisions to SWPPP and/or MIP. Rohr shall revise

20  the SWPPP and/or MIP if there are significant changes in the Rohr Facility's operations

21  that are likely to or will affect the quality of storm water discharges at the Rohr Facility,

22  including but not limited to changes to storm water discharge point(s)/sample location(s),

23  changes or additions to the BMPs at the Rohr Facility changes in manufacturing and non-

24  manufacturing areas, site boundaries,, or cessation of manufacturing and reconfiguration

25  of the storm drain system as described in paragraph 33.

26      32.    Commenting on Revised SWPPP and/or MIP. Rohr shall notify CERF and

27  Coastkeeper of any revised SWPPP and/or MIP within five (5) business days of upload to

28  SMARTS.

32.1.  For any SWPPP or MIP revisions, CERF and Coastkeeper shall
provide comments, if any, to Rohr within thirty (30) days of uploading
to SMARTS of any revised SWPPP and MIP. Within thirty (30) days of
receiving comments from CERF and Coastkeeper, Rohr shall give due
consideration to and shall incorporate CERF and Coastkeeper's
comments into any revised SWPPP and/or MIP or shall justify in writing
why any comment is not incorporated.

**G.    Cessation of Manufacturing; Notice of Amendment**

33.    By January 31, 2021, Rohr intends to cease all manufacturing activities on
the portion of the Facility (i) east of the railroad tracks and (ii) south of G Street, as
depicted on Exhibit D as Parcels A and B. Within ten business days after such cessation
of manufacturing activities, Rohr shall (a) amend its SWPPP and MIP to reflect that
manufacturing activities on this portion of the Rohr Facility have ceased and these
parcels are no longer in manufacturing use; (b) upload the amended SWPPP and MIP to
SMARTS; and (c) provide notice thereof to Plaintiffs ("Notice of Amendment"). Rohr
agrees to provide Plaintiffs opportunity for full site inspection following this notice. The
terms of this Consent Decree will cease to apply to those portions of the Rohr Facility no
longer covered under the Storm Water Permit upon submittal of the Notice of
Amendment to Plaintiffs. This agreement and its terms will survive and remain
applicable to those portions of the Rohr Facility that continue to engage in manufacturing
operations that are subject to the Storm Water Permit.

**H.    Reconfiguration of Storm Drain System**

34.    No later than the date of submittal of the Notice of Amendment (unless
Rohr, in its sole and absolute discretion, shall have previously sought and obtained
approval from the Regional Board of a No Exposure Certification for the portion of the
Rohr Facility north of G Street), Rohr shall reconfigure the storm drain system on the
Rohr Facility such that stormwater drainage from Parcel B is segregated from drainage
from the remainder of the Rohr Facility. Rohr shall provide Plaintiffs with as-built

1  drawings, plans, permits or other information reasonably sufficient to confirm that

2  drainage from Parcel B will be effectively segregated from the remainder of the Rohr

3  Facility. Rohr shall amend its SWPPP and MIP to reflect the reconfiguration of the storm

4  drain system and shall provide Plaintiffs with a copy of the amended SWPPP and MIP

5  upon upload to SMARTS.  Rohr agrees to provide Plaintiffs opportunity for full site

6  inspection following this notice.

7  **IV.    COMPLIANCE MONITORING AND REPORTING**

8      35.    Site Inspections. Each Reporting Year for the life of this Consent Decree,

9  Plaintiffs and its representatives may conduct one (1) noticed site inspection per

10  Reporting Year. The site inspections shall occur during normal business hours, and

11  Plaintiffs shall provide Rohr with three (3) days' notice of an intended inspection. If a

12  Wet Season inspection is noticed, CERF and Coastkeeper will continue to follow the

13  weather forecast and will confirm the Wet Season inspection at least twenty-four (24)

14  hours prior to the start of the inspection in an effort to ensure CERF and Coastkeeper

15  conducts its inspection during a QSE. CERF and Coastkeeper will make efforts to

16  conduct its inspection during a QSE, but a lack of a QSE will not prevent CERF and

17  Coastkeeper from conducting their inspection. During inspections, Plaintiffs'

18  representatives will wear appropriate PPE (at a minimum, safety glasses), appropriate

19  clothing and footwear and remain in the presence of Rohr's representatives at all times.

20  Plaintiffs' inspection team shall consist of no more than three (3) persons.

21      36.    Inspection Team. Prior to any inspection, CERF and Coastkeeper will

22  provide Rohr with full names, verification of US Citizenship or Green Card status, and

23  place of employment for security screening of all persons conducting the inspection.

24  Visitors must have a valid picture identification (driver license, passport) on hand for

25  entry into the facility. During the site inspection, Plaintiffs and/or its representatives shall

26  be allowed access to the Rohr Facility's SWPPP, MIP, and other monitoring records,

27  reports, and all sampling data produced in accordance with the samples identified in

28  paragraphs 14.1, 14.2, and 14.3 of this Consent Decree for the Rohr Facility.

1      37.   <u>QSE Inspection and Sampling</u>. Rohr shall notify CERF and Coastkeeper of

2  its intent to sample a QSE as soon as feasible prior to the QSE. If CERF and Coastkeeper

3  elect (as the inspection described in paragraph 35) to conduct an inspection during that

4  event, they or their representatives may collect split samples of discharges from QSEs

5  within the first four hours of discharge during scheduled facility operating hours and

6  when sampling conditions are safe in accordance with the Storm Water Permit. Any

7  samples collected by Plaintiffs shall be submitted to a certified California laboratory for

8  analysis. Any onsite measurements such as pH shall be taken by a properly trained

9  operator with properly calibrated instruments. Rohr shall have an opportunity to take

10 concurrent measurements using its own equipment. Plaintiffs shall provide Rohr with

11 split samples, and a copy of the Chain of Custody. Copies of the complete laboratory

12 reports shall be provided to Rohr within five (5) business days of receipt. If CERF and

13 Coastkeeper wish to conduct an inspection at a time other than when Rohr plans to

14 sample a QSE, CERF and Coastkeeper shall notify Rohr of such intent a minimum of five

15 (5) business days before such inspection.

16     38.   <u>Reporting and Documents</u>. During the life of this Consent Decree, Rohr

17 shall notify Plaintiffs regarding all documents related to storm water at the Rohr Facility

18 that are submitted to SMARTS, including data and reports uploaded to SMARTS. Rohr

19 shall also notify Plaintiffs of any documents relating to the Storm Water Permit that are

20 submitted directly to or received directly from the Regional Board. Rohr shall also

21 provide notice of any storm water-related inspection by the City of Chula Vista. Rohr

22 shall provide each such notice within ten (10) business days after the event in this

23 paragraph 38 triggering the notice requirement.

24     39.   <u>Compliance Monitoring and Oversight</u>. Rohr shall pay a total of five

25 thousand dollars ($5,000) to compensate CERF and Coastkeeper for costs and fees to be

26 incurred for monitoring the Rohr Facility's compliance with this Consent Decree.

27 Payment shall be made within five (5) business days of the Effective Date payable to

28 Coastal Environmental Rights Foundation via certified U.S. Mail or commonly accepted

1  carrier to 1140 South Coast Highway 101 Encinitas, California 92024.

2      40.    <u>Action Plan Payment</u>.  Rohr shall pay three thousand dollars ($3,000) per

3  Action Plan for CERF and Coastkeeper's reasonable costs to review any Action Plan

4  submitted.  Payment shall be made within ninety (90) days of the submittal by CERF and

5  Coastkeeper of an invoice for the costs to review the Action Plan. Payment shall be to

6  Coastal Environmental Rights Foundation via certified U.S. Mail or commonly accepted

7  carrier to 1140 South Coast Highway 101 Encinitas, California 92024.

8  **V.    Environmental Project, Reimbursement of Litigation Fees and Costs, and**

9        **Stipulated Payments**

10      41.    <u>Environmental Project</u>. Rohr agrees to make a payment totaling twenty-five

11  thousand dollars ($25,000) to San Diego Audubon to fund environmental project

12  activities that will reduce or mitigate the impacts of storm water pollution from industrial

13  activities in or around the San Diego Bay and its tributaries. Payment shall be made

14  payable to: San Diego Audubon via certified U.S. Mail to Chris Redfern, San Diego

15  Audubon 4010 Morena Blvd St 100 San Diego, CA 92117 within ten (10) business days

16  of the Effective Date.

17      42.    <u>Reimbursement of Plaintiff's Fees and Costs</u>. Rohr shall pay a total of

18  seventy thousand ($70,000) to San Diego Coastkeeper and Coast Law Group, LLP to

19  reimburse Plaintiffs for their investigation fees and costs, expert/consultant fees and

20  costs, and reasonable attorneys' fees incurred as a result of investigating and preparing

21  the lawsuit and negotiating this Consent Decree. Payments shall be made within ten (10)

22  business days of the Effective Date and payable to: Coast Law Group, LLP, Attn: Livia

23  Borak Beaudin via certified U.S. Mail or commonly accepted carrier to 1140 South Coast

24  Highway 101 Encinitas, California 92024.

25      43.    <u>Stipulated Payments</u>. Rohr shall make a remediation payment of one

26  thousand five hundred dollars ($1,500) for each Missed Deadline included in this

27  Consent Decree. Rohr shall have thirty (30) days to cure any Missed Deadline or, in the

28  alternative, invoke the dispute resolution procedures set forth below. Unless dispute

1  resolution procedures have been invoked, Rohr agrees to make the stipulated payment to

2  San Diego Audubon to fund environmental project activities that will reduce or mitigate

3  the impacts of storm water pollution from industrial activities in or around the San Diego

4  Bay and its tributaries within ninety (90) days of Plaintiffs' submittal of an invoice for

5  Missed Deadline.  Rohr shall provide Plaintiffs with a copy of each such payment at the

6  time it is made.

7  **VI.    DISPUTE RESOLUTION**

8      44.    <u>Retention of Jurisdiction</u>.  This Court shall retain jurisdiction over this

9  matter until the final termination date defined above for the purposes of implementing

10  and enforcing the terms and conditions of this Consent Decree and adjudicating all

11  disputes among the Settling Parties that may arise under the provisions of this Consent

12  Decree. The Court shall have the power to enforce this Consent Decree with all available

13  legal and equitable remedies, including contempt.

14      45.    <u>Meet and Confer</u>. A party to this Consent Decree shall invoke the dispute

15  resolution procedures of this Section by notifying all other Settling Parties in writing of

16  the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith

17  (either telephonically or in person) in an attempt to resolve the dispute informally over a

18  period of fourteen (14) calendar days from the date of the notice. The Settling Parties

19  may elect to extend this time in an effort to resolve the dispute without court intervention.

20      46.    <u>Mediation</u>.  If the Settling Parties cannot resolve a dispute by the end of

21  meet and confer informal negotiations, any party may invoke mediation proceedings by

22  notifying the other parties in writing ("Notice") no more than five business days after

23  expiration of the 14-day process and the mediation shall be held in the offices of JAMS

24  San Diego within 30 days after the Notice. The parties shall mutually agree on a mediator

25  and a mediation process within 15 days of the Notice or, if no such agreement is reached,

26  a mediator shall be appointed by JAMS.  If the parties cannot resolve the dispute through

27  the foregoing meet and confer and/or mediation process and procedures, any party may

28  seek judicial enforcement of the terms of the Consent Decree by filing a motion in the

1  court in which the Action was filed. The parties shall jointly request an expedited
2  schedule for hearing and decision on the motion.

3      47.    <u>Burden of Proof</u>.

4      a.    Except as provided in subparagraph (b) below, the burden of proof for
5  Formal Dispute Resolution shall be in accordance with applicable law.

6      b.    In the event of any disagreement or dispute between Plaintiffs and
7  Rohr over the necessity or appropriateness of implementing any particular BMP or set of
8  BMPs, Rohr shall bear the burden of demonstrating that its BMPs, collectively, constitute
9  BAT/BCT for the Rohr Facility, or that it is in compliance with the terms of this Consent
10  Decree. Plaintiffs shall not be required to prove that Rohr's BMPs do not constitute
11  BAT/BCT.

12      48.    <u>Fees and Costs</u>.  Litigation costs and fees incurred in conducting the meet
13  and confer, mediation, or otherwise addressing and/or resolving any dispute, including an
14  alleged breach of this Consent Decree, shall be awarded in accord with the standard
15  established by Section 505 of the Clean Water Act, 33 U.S.C. §§1365 and 1319, and case
16  law interpreting that standard.

17      49.    <u>Force Majeure.</u>  No Settling Party shall be considered to be in default in the
18  performance of any of its obligations under this Consent Decree when performance
19  becomes impossible due to circumstances beyond the Settling Party's control, including
20  Force Majeure, which includes any act of god, war, fire, earthquake, windstorm, flood or
21  natural catastrophe; civil disturbance, vandalism, sabotage, or terrorism; restraint by court
22  order or public authority or agency; inability to proceed due to pending litigation under
23  the California Environmental Quality Act; action or non-action by, or inability obtain the
24  necessary authorizations, approvals, or permits from, any governmental agency; or
25  inability to obtain equipment or materials from the marketplace if such materials or
26  equipment are not reasonably available, though the cost of such material or equipment is
27  not a factor in whether it is reasonably available. Impossibility and/or Force Majeure
28  shall not include normal inclement weather, economic hardship, or inability to pay. Any

party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the impossibility or Force Majeure event and which by exercise of due diligence has been unable to overcome the failure or performance. Delay in compliance with a specific obligation under this Consent Decree due to impossibility and/or Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Consent Decree.

a.    If Rohr claims compliance was or is impossible, it shall notify Plaintiffs in writing as soon as possible, but in no event more than five (5) business days of the date that Rohr learns of the event or circumstance that caused or would cause a violation of this Consent Decree (hereinafter referred to as the "Notice of Nonperformance").

b.    Within ten (10) business days of sending the Notice of Nonperformance, Rohr shall send Plaintiffs a detailed description of the reason for the nonperformance and the specific obligations under the Consent Decree that are or have been affected by the Force Majeure. It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by Rohr to prevent or minimize the delay, the schedule by which the measures shall be implemented, and the anticipated date of compliance. Rohr shall adopt all reasonable measures to avoid and minimize such delays.

c.    The Settling Parties shall meet and confer in good faith concerning the non-performance and, where the Settling Parties concur that performance was or is impossible due to an event or matter covered under the Force Majeure provisions of this Consent Decree, despite the timely good faith efforts of Rohr, new deadlines shall be established.

d.    If Plaintiffs disagrees with Rohr's Notice of Nonperformance, or in the event that the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either party shall have the right to invoke the dispute resolution procedure pursuant to Article VI. In such proceeding, Rohr shall bear the burden of proving that any delay in performance of any requirement of this Consent Decree was

1   caused or will be caused by impossibility and/or Force Majeure and the extent of any

2   delay attributable to such circumstances.

3   **VII.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

4        50.    CERF and Coastkeeper's Release. Upon the Effective Date of this Consent

5   Decree, each of CERF and Coastkeeper, on its own behalf and on behalf of its current

6   and former officers, directors, employees, and each of their successors and assigns, and

7   its agents, attorneys, and other representatives releases all persons including, without

8   limitation, Rohr (and each of their direct and indirect parent and subsidiary companies

9   and affiliates, and their respective current and former officers, directors, members,

10  employees, shareholders, and each of their predecessors, successors, and assigns, and

11  each of their agents, attorneys, consultants, and other representatives) from and waives all

12  claims alleged or that could have been alleged in the Notice Letter and/or Complaint

13  which arise from or pertain to the subject matter of the Notice of Intent and/or Complaint

14  up to the date of termination of this Consent Decree.

15       51.    Rohr's Release.  Upon the Effective Date of this Consent Decree, Rohr, on

16  its own behalf and on behalf of its current and former officers, directors, employees,

17  members, and each of their successors and assigns, and their agents, attorneys, and other

18  representatives releases CERF and Coastkeeper (and its current and former officers,

19  directors, employees, members, parents, subsidiaries, and affiliates, and each of their

20  successors and assigns, and its agents, attorneys, and other representatives) from and

21  waives all claims which arise from or pertain to this action, including all claims for fees

22  (including fees of attorneys, experts, and others), costs, expenses, or any other sum

23  incurred or claimed for matters related to the subject matter of CERF and Coastkeeper's

24  Notice Letter and Complaint up to the date of termination of this Consent Decree.

25       52.    Administrative Proceedings. Nothing in this Consent Decree limits or

26  otherwise affects either Party's right to address or take any position that it deems

27  necessary or appropriate in any formal or informal proceeding before the State Board,

28  Regional Board, EPA, or any other administrative body on any other matter relating to

1  Rohr's compliance with the Storm Water Permit or the Clean Water Act occurring or

2  arising after the Effective Date of this Consent Decree.

3  **VIII.    MISCELLANEOUS PROVISIONS**

4      53.    No Admission of Liability. Neither this Consent Decree, the implementation

5  of additional BMPs, any action taken by Rohr to carry out the terms of the Consent

6  Decree nor any payment pursuant to the Consent Decree shall constitute or be construed

7  as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability,

8  nor shall it be construed as an admission of violation of any law, rule, or regulation. Rohr

9  maintains and reserves all defenses they may have to any alleged violations that may be

10  raised in the future.

11      54.    Construction. The language in all parts of this Consent Decree shall be

12  construed according to its plain and ordinary meaning, except as to those terms defined in

13  the Storm Water Permit, the Clean Water Act, or specifically herein.

14      55.    Choice of Law. The laws of the United States shall govern this Consent

15  Decree.

16      56.    Severability. In the event that any provision, paragraph, section, or sentence

17  of this Consent Decree is held by a court to be unenforceable, but the remainder of its

18  provisions may be enforced without material failure of consideration to any party, the

19  validity of the enforceable provisions shall not be adversely affected.

20      57.    Correspondence. Unless specifically provided for in this Consent Decree, all

21  notices required herein or any other correspondence pertaining to this Consent Decree

22  shall be sent by U.S. mail or electronic mail as follows:

23      If to Plaintiffs:

24      Coastal Environmental Rights Foundation
        Attn: Erika Cueva

25      1140 South Coast Highway 101

26      Encinitas, California 92024
        Erika@cerf.org

27

28      And

1   San Diego Coastkeeper
2   Attn: Matt O'Malley
3   2825 Dewey Road, Suite 207
    San Diego, CA 92106
4   Matt@sdcoastkeeper.org

5   With a copy to

6   Livia Borak Beaudin
7   Coast Law Group, LLP
    1140 South Coast Highway 101
8   Encinitas, California 92024
9   Livia@coastlaw.com

10  If to Rohr:

11  Rohr, Inc.
12  850 Lagoon Drive
    Chula Vista, CA 91910
13  Attn: Rick Siordia
14  Rick.Siordia@utas.utc.com

15  With a copy to:

16  Perkins Coie, LLP
17  505 Howard St., 10th Fl.
    San Francisco, CA 94105
18  Attn: Geoffrey Robinson and
19        Laura Zagar
    GRobinson@perkinscoie.com
20  LZagar@perkinscoie.com

21  and

22
23  Rohr, Inc.
    850 Lagoon Drive, mx 107X
24  Chula Vista, CA 91910
25  Attn:  Office of the General Counsel
    kyle.strong@utas.utc.com
26
    Notifications of communications shall be deemed submitted three (3) business days after
27
    having been sent via U.S. mail or the day of sending notification or communication by
28
    electronic mail. Any change of address or addresses shall be communicated in the manner

---

Consent Decree                        25                   Civil Case No. 3:19-cv-00777-WQH-BLM

1  described above for giving notices.

2      58.   Effect of Consent Decree. Except as provided herein, CERF and

3  Coastkeeper do not, by their consent to this Consent Decree, warrant or aver in any

4  manner that Rohr's compliance with this Consent Decree will constitute or result in

5  compliance with any federal or state law or regulation. Nothing in this Consent Decree

6  shall be construed to affect or limit in any way the obligation of Rohr to comply with all

7  federal, state, and local laws and regulations governing any activity required by this

8  Consent Decree.

9      59.   Counterparts. This Consent Decree may be executed in any number of

10  counterparts, all of which together shall constitute one original document. Telecopy,

11  email of a .pdf signature, and/or facsimile copies of original signature shall be deemed to

12  be originally executed counterparts of this Consent Decree.

13      60.   Modification of the Consent Decree. This Consent Decree, and any

14  provisions herein, may not be changed, waived, discharged, or terminated unless by a

15  written instrument, signed by the Settling Parties. If any Settling Party wishes to modify

16  any provision of this Consent Decree, the Settling Party must notify the other Settling

17  Party in writing at least twenty-one (21) days prior to taking any step to implement the

18  proposed change.

19      61.   Full Settlement. This Consent Decree constitutes a full and final settlement

20  of this matter.

21      62.   Integration Clause. This is an integrated Consent Decree. This Consent

22  Decree is intended to be a full and complete statement of the terms of the agreement

23  between the Settling Parties and expressly supersedes any and all prior oral or written

24  agreements, covenants, representations, and warranties (express or implied) concerning

25  the subject matter of this Consent Decree.

26      63.   Authority. The undersigned representatives for Plaintiffs and Rohr each

27  certify that he/she is fully authorized by the party whom he/she represents to enter into

28  the terms and conditions of this Consent Decree.

1    64.    Certification.  The Settling Parties certify that their undersigned

2   representatives are fully authorized to enter into this Consent Decree, to execute it on

3   behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

4    65.    Successors and Assigns. The Settling Parties, including any successors or

5   assigns, agree to be bound by this Consent Decree and not to contest its validity in any

6   subsequent proceeding to implement or enforce its terms. Notwithstanding any other

7   provision of this Consent Decree, the conveyance, assignment, hypothecation, lease, or

8   other transfer or pledge to any other party ("Transferee") of any interest in any portion of

9   the Rohr Facility as to which a Notice of Amendment has been submitted to Plaintiffs, as

10   provided in paragraph 33, shall not operate to transfer to or impose on any such

11   Transferee any of the obligations under this Agreement, nor shall any such Transferee be

12   obligated or bound in any manner, directly or indirectly, by the provisions of this Consent

13   Decree.

14    66.    Headings.  The section and paragraph headings in this Consent Decree are

15   solely for convenience of reference and shall not affect the meaning or interpretation of

16   any of its terms.

17    **IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree

18   as of the date first set forth below.

19   APPROVED AS TO CONTENT

20

21   Dated:    August 6, 2019          By: _____

22                                       Erika Cueva

                                         Coastal Environmental Rights Foundation

23

24   Dated:    _____         By: _____

                                         Catherine Stiefel

25                                       San Diego Coastkeeper

26

27

28

1  certify that he/she is fully authorized by the party whom he/she represents to enter into

2  the terms and conditions of this Consent Decree.

3      64.    Certification.  The Settling Parties certify that their undersigned

4  representatives are fully authorized to enter into this Consent Decree, to execute it on

5  behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

6      65.    Successors and Assigns. The Settling Parties, including any successors or

7  assigns, agree to be bound by this Consent Decree and not to contest its validity in any

8  subsequent proceeding to implement or enforce its terms. Notwithstanding any other

9  provision of this Consent Decree, the conveyance, assignment, hypothecation, lease, or

10  other transfer or pledge to any other party ("Transferee") of any interest in any portion of

11  the Rohr Facility as to which a Notice of Amendment has been submitted to Plaintiffs, as

12  provided in paragraph 33, shall not operate to transfer to or impose on any such

13  Transferee any of the obligations under this Agreement, nor shall any such Transferee be

14  obligated or bound in any manner, directly or indirectly, by the provisions of this Consent

15  Decree.

16      66.    Headings.  The section and paragraph headings in this Consent Decree are

17  solely for convenience of reference and shall not affect the meaning or interpretation of

18  any of its terms.

19      IN WITNESS WHEREOF, the undersigned have executed this Consent Decree

20  as of the date first set forth below.

21  APPROVED AS TO CONTENT

22

23  Dated: _____      By: _____
                                        Erika Cueva
24                                      Coastal Environmental Rights Foundation

25  Dated:  _July 24 2019_              By _____
26                                      Catherine Stiefel
27                                      San Diego Coastkeeper

28

1    Dated: ___August 6, 2019___    By: _____
                                        Mike Grondalski
2                                      Its: _Vice President, Operations_
3                                      Rohr, Inc.

4

5    APPROVED AS TO FORM

6

7    Dated: _____    By: _____
                                    Livia Borak Beaudin
8                                   Coast Law Group, LLP
9                                   Attorney for Plaintiffs

10   Dated: _____    By: _____
                                    Matt O'Malley
11                                  San Diego Coastkeeper
12                                  Attorney for Plaintiffs

13

14   Dated: ___August 6, 2019___    By: _____
                                        Geoffrey L. Robinson
15                                      Perkins Coie, LLP
16                                      Attorneys for Rohr, Inc.

17

18   IT IS SO ORDERED.

19

20

21   Date: _____    _____
                                Hon. William Q. Hayes
22                              United States District Court Judge
23                              Southern District of California

24

25

26

27

28

_____
Consent Decree                  28              Civil Case No. 3:19-cv-00777-WQH-BLM

1    Dated:        August 6, 2019_____        By: _____

2                                              Its: _____
3                                              Rohr, Inc.

4

5    APPROVED AS TO FORM

6

7    Dated:        August 6, 2019_____        By: s/ Livia Borak Beaudin____
8                                              Livia Borak Beaudin
9                                              Coast Law Group, LLP
                                               Attorney for Plaintiffs

10   Dated:        _____             By: _____
11                                             Matt O'Malley
12                                             San Diego Coastkeeper
                                               Attorney for Plaintiffs
13

14   Dated:        August 6, 2019_____        By: _____
15                                             Geoffrey L. Robinson
16                                             Perkins Coie, LLP
                                               Attorneys for Rohr, Inc.
17

18   **IT IS SO ORDERED.**

19

20

21   Date: _____

22                                             Hon. William Q. Hayes
23                                             United States District Court Judge
                                               Southern District of California

24

25

26

27

28

1  Dated: _____        By: _____

2                                        Its: _____
3                                        Rohr, Inc.

4

5  APPROVED AS TO FORM

6

7  Dated: _____        By: _____
                                         Livia Borak Beaudin
8                                        Coast Law Group, LLP
9                                        Attorney for Plaintiffs

10 Dated: _____8/6/19_____         By: _____
11                                       Matt O'Malley
                                         San Diego Coastkeeper
12                                       Attorney for Plaintiffs

13

14 Dated: _____        By: _____
15                                       Geoffrey L. Robinson
                                         Perkins Coie, LLP
16                                       Attorneys for Rohr, Inc.

17

18 IT IS SO ORDERED.

19

20

21 Date: _____9/30/19_____         _____
22                                       Hon. William Q. Hayes
                                         United States District Court Judge
23                                       Southern District of California

24

25

26

27

28

## EXHIBIT A

### STORMWATER SAMPLING LOCATIONS ON ROHR FACILITY



## EXHIBIT B

### SCHEDULES FOR REDUCTION IN MANUFACTURING ACTIVITIES AND REMOVAL OF TOOLING

| | |
|---|---|
| Removal of all outdoor-stored tooling in area of Outfall 2 by 3/31/19. | *Completed* |
| Removal of all remaining outdoor-stored tooling. | *Completed* |
| 75% reduction in manufacturing activities by 3/31/19. | *Completed* |
| 100% reduction in manufacturing activities. | *1/31/21* |

## **EXHIBIT C**

### **BMP IMPLEMENTATION SCHEDULE**

| BMP | SCHEDULE FOR IMPLEMENTATION |
|---|---|
| Installation of filters on, under or around selected downspouts capable of reducing soluble metal concentrations in water or, if reasonably determined that downspout filters will not be effective, placement of Filtrexx rolls in downspout discharge areas. | *Completed*<br><br>*(To be replaced annually as needed)* |
| Installation of six additional storm drain inlet filters containing metal-sorbent materials (in place of existing filters) of, if reasonably determined that inlet filters will not be effective, placement of Filtrexx rolls in one or more of the storm drain inlet areas. | *Completed*<br><br>*(To be replaced annually as needed)* |
| Installation of additional metal-sorbent rolls (such as Filtrexx metallox TM rolls or similar materials) as appropriate in locations such as drainage culverts and the downstream side of the tool storage area. | *As and when needed.*<br><br>*(To be replaced annually as needed)* |
| Slurry coating/paving or installation of Filtrexx rolls at selected areas of the Facility that continue in manufacturing use after the Manufacturing Reduction and Tooling Removal. | *After 12/31/20 as and when needed.* |
| Berm west of Building 61 (asphaltic curb). | *To be installed as needed after 12/31/20* |
| Tool removal and relocation. | *Completed* |
| Installation of the Ion Exchange Treatment System. | *October 1, 2019 (subject to required permitting or access agreements and applicable lead times for delivery, installation and testing)* |
| On and after the Threshold Date, additional advanced BMPs as necessary to achieve Table 1 Numeric Thresholds. | *After 1/31/21, as and when needed.* |

**EXHIBIT D**

**CESSATION OF MANUFACTURING — DEPICTION OF PARCELS A & B**

# EXHIBIT D

## Rohr, Inc.; Chula Vista Site – Cessation of Manufacturing on Parcels A and B



- Parcel A:  Property east of the railroad tracks
- Parcel B:  Property South of G Street
- Parcel C:  Bldg. 107 Administrative Offices; Aftermarket; Test Lab Operations

Note:  The southern boundary of the parking lot on Parcel C may be adjusted based on parking needs and other site planning considerations.



© 2018 Collins Aerospace, a United Technologies company. All rights reserved. Proprietary Information    2